UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**TERRY W. COOK JR.**                                                                     **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 4:22-CV-P48-JHM**

**DAVIESS COUNTY DETENTION CENTER** *et al.*                 **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion for summary judgment filed by Defendants Dr. Tamberly McCoy and Nurse Nicole Fentress. (DN 35). Proceeding *pro se*, Plaintiff Terry Cook, Jr., filed a response to the motion. (DN 45). Defendants did not file a reply, and the time for doing so has expired. The motion being ripe for adjudication and for the reasons that follow, Defendants' motion for summary judgment will be granted.

**I.**

Plaintiff, a pretrial detainee at the Daviess County Detention Center (DCDC), initiated this 42 U.S.C. § 1983 action. Upon initial review of the original complaint (DN 1) pursuant to 28 U.S.C. § 1915A, the Court dismissed the claims and allowed Plaintiff to file an amended complaint setting forth facts detailing how each Defendant allegedly violated his constitutional rights. (DN 13). Plaintiff filed an amended complaint. (DN 14). The Court conducted initial review of the amended complaint and allowed claims to proceed based on the facts that follow. (DN 15).

In the amended complaint, signed under penalty of perjury, Plaintiff alleged that he "presented in the medical dept at DCDC on 8/4/21 @ 23:49 with uncontrollable vomiting and diarrhea." (DN 14, PageID.102). He stated, "The nurse, Nicole Fentress is/was aware of my pre-existing condition of extreme hypertension because she has seen me on this issue several times

over the past 18 months. My B.P. at this time was abnormally and extremely low. 82/50." (*Id.*). Plaintiff maintained, "Per policy, stated by the nurses, the doctor should have been called but was not. I was assisted back to my cell and told to wait for the doctor who would be here on 8/6/21." (*Id.*).

Plaintiff next stated, "I presented in medical dept on 8/5/21 @ 0602 with same symptoms only worse. B.P. taken. 80/50. Again, per policy doctor should have been called, but was not." (*Id.*). He further asserted, "Presented to medical dept at DCDC on 8/6/21 @1049 to see Dr. McCoy. I was unable to stand or walk. I arrived in medical in a wheelchair." (*Id.*, PageID.102-03). He stated, "I was extremely pale, diaphoretic, clammy and incoherant. B.P. was attempted by Nurse Thompson with B.P. machine and by manual cuff. B.P. was too low to register on either. Dr. McCoy ordered me rushed to the hospital via jail cruiser." (*Id.*, PageID.103).

Plaintiff reported that he was admitted to the Owensboro Health Regional Hospital intensive care unit "for extreme dehydration and kidney failure." He stated, "Dialysis ordered and started on 8/7/21. Blood test showed I had contracted Campylobacter Infection." (*Id.*). Plaintiff asserted that upon his discharge from the hospital a kidney specialist made two follow up appointments for him and instructed that he should appear in person. (*Id.*). He stated, "These appointments were immediately canceled and deemed 'unnecessary' by Dr. McCoy." (*Id.*).

Plaintiff alleged that his rights were violated "by SHP nurses and Dr. McCoy because their 'policy' of contacting the doctor was not followed." (*Id.*). He maintained, "Failure to treat my medical condition and failure to react to my significant drop in B.P. resulted in unnecessary and significant injury and unwanton infliction of pain." (*Id.*).

Upon initial review of the amended complaint, the Court allowed Plaintiff's claims based on denial of medical treatment in violation of the Fourteenth Amendment to proceed against Defendants McCoy and Fentress in their individual capacities. (DN 15).

## II.

### A.

In their motion for summary judgment (DN 35), Defendants McCoy and Fentress argue that Plaintiff has failed to provide sufficient evidence to show deliberate indifferent to his serious medical needs. (DN 35, PageID.192-93). They maintain that Plaintiff was "provided extensive medical care while housed at the [DCDC]" and that "[m]edical treatment was provided for daily medication administration of multiple medications, routine medical follow-up, multiple sick calls, transport out to the hospital, and blood glucose and blood pressure checks." (*Id.*, PageID.193). They attach medical records which show the treatment Plaintiff received at DCDC. The Court will summarize the relevant medical records Defendants produce.

Defendants produce a progress note from DCDC dated August 4, 2021, at 11:49 p.m. documenting that Plaintiff presented to the medical department for "nausea, vomiting, diarrhea, and chills." (*Id.*, PageID.219). Plaintiff was "pale in color, diaphoretic, BP 82/50, states that he has had multiple episode of diarrhea and dry heaves." (*Id.*). The medical provider[1] gave Plaintiff a "bottle of gatorade and cool wet cloth"; "[a]dvised patient to sip on gatorade and to move slowly when arising from bed"; and "[i]nformed him to let deputy know if he started to feel worse and I would see him again." (*Id.*). Plaintiff was given the day off of work on August 5, 2021, and given Pepto Bismol. (*Id.*).

---

[1] The progress note does not identify the specific medical provider who made the note, but the parties agree that Defendant Fentress was the medical provider who entered the August 4 and 5, 2021, progress notes.

3

Defendants also produce a progress note dated August 5, 2021, at 6:02 am. (*Id.*, PageID.219). The medical provider charted, "Patient to medical with per deputy. Patient continues to vomit and have diarrhea. States that he vomited pepto-bismol that was given earlier. Patient continues to be pale in color, diaphoretic, clammy and BP 80/50. Gatorade given and advised to rise slowly when getting up." (*Id.*). The medical provider also gave Plaintiff 4 mg of Zofran. (*Id.*).

Defendants attach another progress note dated August 6, 2021, at 10:49 am which states, "[L]ate entry for 8/5/21 approximately 0830; pt brought to medical while MD here to evaluate pt's c/o N/V/D.  heart rate 111, b/p unable to obtain, pt diaphoretic, A&O x3 and reports he is having loose stools about every 30 minutes.  MD advises pt be sent to ER which is done via cruiser." (*Id.*, PageID.225).[2]

Defendants next produce a medical record from Owensboro Health Regional Hospital documenting that Plaintiff was admitted to the hospital on August 5, 2021. (*Id.*, PageID.226-27). The medical provider noted that Plaintiff stated "yesterday he started becoming extremely weak and nurse in the jail noted that he was hypotensive, this continue to worsen which is what led to him being brought into the ED." (*Id.*, PageID.226). The medical provider charted the following:

> Upon arrival to the ED he was noted to be hypotensive, pale and diaphoretic. Glucose 137, BUN 34 creatinine 5.4, sodium 133, potassium 3.6, chloride 95 serum bicarb 20. WBC 15.2. he was given 3L normal saline in the emergency department and was noted to still be borderline low hypotensive. He was then transferred to the ICU, upon arrival his systolic blood pressures was in the 90s and a MAP >65.

(*Id.*, PageID.226). The note states that Plaintiff was diagnosed with hypovolemic shock, acute kidney injury, and leukocytosis. (*Id.*, PageID.227). He was discharged from the hospital on August 9, 2021. (*Id.*).

---

[2] While the progress note does not identify the medical provider who made the note, there is no dispute that the "MD" referenced in the note is Defendant McCoy.

Defendants also attach a progress note from a medical provider at DCDC dated August 9, 2021, which states that a hospital medical provider discontinued two of Plaintiff's medications and ordered "a CBC and CMP in 2 weeks with the results called in to Dr. Maru." (*Id.*, PageID.228). The note also states, "I was also informed that due to his acute kidney failure that is he no longer to received NS Aids . . . ." (*Id.*). The note also documents, "He has a tegaderm to his neck that is to be removed in 24 hours . . . ." Defendants attach another progress note dated August 10, 2021, which states, "dressing to right neck removed, area intact with no s/s infection noted.  pt instructed to monitor the area and notify medical of any changes." (*Id.*, PageID.229).

Defendants produce chart notes which show that Plaintiff had lab work done on August 23, 2021, which Defendants state were the CBC and CMP tests ordered by the hospital. (*Id.*, PageID.195, 230). Defendants also produce medical records which they maintain show that Plaintiff was seen by SHP medical providers between October 8, 2021, and December 2, 2022, for "myriad issues, none of which were related to his hospitalization in August of 2021." (*Id.*, PageID.195).

Defendants argue that they are entitled to summary judgment because Plaintiff has not produced evidence to show deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment under the modified standard adopted by the Sixth Circuit in *Brawner v. Scott Cnty.*, 14 F. 4th 585 (6th Cir. 2021). Alternatively, they argue that they are entitled to qualified immunity.

**B.**

Plaintiff filed a response to the motion signed under penalty of perjury (DN 45), in which he states that while Defendants claim that he received extensive medical care during his incarceration at DCDC, "I am not holding Dr. McCoy and Nurse Nicole Fentress accountable for

5

the whole time of my incarceration. Only the dates following 8-4-21 are to be considered." (*Id.*, PageID.286-87). Plaintiff asserts, "The medical is very aware of my on-going battle with extremely high blood pressure." (*Id.*, PageID.287). He attaches blood pressure logs to his response which he argues "show that <u>all</u> nurses were fully aware of my high blood pressure issues several months before the incident in question. So it makes no sense why on the date in question 8/4/21 when I was brought to the medical department for treatment, my blood pressure of 82/50 was ignored." (*Id.*). He states as follows:

> This is an obvious sign of cardiac distress and, according to other nurses, I should have been transported to the hospital to discover why my blood pressure suddenly dropped. Instead, I was given Pepto Bismol and gatorade to treat severe vomiting and diarrhea. . . . Six hours later, I was wheeled by wheel chair back to medical with the same symptoms but worse. . . . I told medical I had immediately vomited up the medication previously given and was, again, given a pill, Zofran 4 mg, that I told medical I would not be able to hold down. Blood pressure was taken and recorded as 80/50. Lower than the blood pressure taken 6 hours before. Again, an obvious sign on <u>distress</u> <u>was</u> <u>ignored</u>. On 8/6/21 I was wheeled via wheel chair to see Dr. Tamberly McCoy 48 hours after my first medical visit. . . . Blood pressure was attempted but too low to be obtained. Finally, I was transported to the hospital.

(*Id.*, PageID.287-88).

Plaintiff states that when he arrived at Owensboro Health Regional Hospital, blood tests showed that "both my kidneys had failed due to a bacterial infection called Campylobacter." (*Id.*, PageID.288). He states that he was placed in the intensive care unit "for Acute Kidney Failure, Campylobacter Infection, and <u>uncontrolled</u> Hypertension." (*Id.*). He states, "On 8-6-21 surgery was done to insert a catheter into my jugular vein in order to start emergency dialysis." (*Id.*). He asserts, "This central line was placed in my jugular vein (neck) because my blood pressure was so low, that was the only vein that would not collapse when the dialysis machine began to draw blood. The machine alarmed out several times anyway because my blood pressure had not risen enough." (*Id.*, PageID.288-89). Plaintiff states that he was discharged from the

hospital on August 9, 2021. He states that his kidney specialist made two follow up appointments for him for four weeks and six weeks out and told a DCDC captain that he needed to see Plaintiff in person. Plaintiff states that after he arrived back at DCDC "those appointments were cancelled and I have yet to see my specialist." (*Id.*, PageID.289).

Plaintiff further maintains, "It came to my attention through several nurses here at DCDC that I should have been transported to the Emergency Room (ER) the first time my blood pressure was taken." (*Id.*). He states that he asked a non-Defendant nurse about this and "she said it was a clear sign of some kind of cardiac distress and a sign of something more severe." (*Id.*). He states that he asked the nurse "if there was a medical policy that covered that and she showed me the policy . . . ." (*Id.*). Plaintiff reports when he decided to file this suit, he requested a copy of the policy and was told that the policy was confidential. (*Id.*). He states that he has requested the policy from SHP and Defendants' attorneys and the requests have gone unanswered. (*Id.*).

Plaintiff also states, "Several attempts have been made to interview witnesses and to gather the necessary material to dispute the claims in the defendants motion, and every attempt has been blocked by Jailer Art Maglinger." (*Id.*, PageID.289-90). As an example, he states that inmates are not given a specific day and time for blood pressure checks and sometimes miss them. (*Id.*, PageID.290). He also argues that he has not been allowed "to speak to inmates who were in the cell on 8-4-21, or the deputy who alerted medical to my condition." (*Id.*). He states, "Any attempt to gather evidence to dispute the defendants claims has been blocked, not approved, and/or ignored by medical staff, jail staff, the jailer, and the defendants attorney." (*Id.*). He also states, in regard to the blood glucose testing that Defendants reference in their motion, "I am not nor have I even

been a diabetic. There was no need to do this other than to show they were providing medical care, but that medical care was totally unnecessary." (*Id.*, PageID.290-91).[3]

Defendants did not file a reply.

### III.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the

---

[3] Plaintiff attaches medical records to his response which the Court will discuss below.

summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

## IV.

### A.

The Due Process Clause of the Fourteenth Amendment "forbids holding pretrial detainees in conditions that 'amount to punishment.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 405 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Therefore, when a pretrial detainee asserts a claim of denial of medical treatment, the claim is analyzed under the Fourteenth Amendment. *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566-67 (6th Cir. 2020) (citing *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018)). "The Sixth Circuit has historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). However, in *Kingsley v. Hendrickson*, the Supreme Court analyzed the standard applied to an excessive-force claim brought by a pretrial detainee and eliminated the subjective prong of the deliberate indifference standard for such a claim. 576 U.S. at 397-400.

In *Brawner v. Scott Cnty.*, the Sixth Circuit held in a panel decision that "*Kingsley* requires modification of the subjective prong of the deliberate-indifference test for pretrial detainees" in the context of a claim of deliberate indifference to serious medical needs. 14 F.4th at 596. *Brawner* held that to show deliberate indifference, "[a] defendant must have not only acted deliberately (not accidentally), but also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id*. (quoting *Farmer*, 511 U.S. at 836). Put another way, the Sixth Circuit held, "A pretrial detainee must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id*. (internal quotation marks omitted).

Since its decision in *Brawner*, the Sixth Circuit has issued several decisions applying the standard for deliberate-indifference-to-serious-medical-needs claims brought by pretrial detainees. In *Trozzi v. Lake Cnty.,* 29 F.4th 745 (6th Cir. 2022), for example, a Sixth Circuit panel articulated the modified standard as follows:

> [A] plaintiff must satisfy three elements: (1) the plaintiff had an objectively serious medical need; (2) a reasonable officer at the scene (knowing what the particular jail official knew at the time of the incident) would have understood that the detainee's medical needs subjected the detainee to an excessive risk of harm; and (3) the prison official knew that his failure to respond would pose a serious risk to the pretrial detainee and ignored that risk.

*Id*. at 757. The court found that this standard still "ensur[es] that there is a sufficiently culpable mental state to satisfy the []high bar[] for constitutional torts grounded in a substantive due process violation." *Id*. at 758.

Thereafter, a Sixth Circuit panel decided *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 316 (6th Cir. Feb. 9, 2023), which held that *Trozzi*'s "framing of the elements is irreconcilable with *Brawner*." The Sixth Court stated, "Simply put, *Brawner* held that *Kingsley* required us to lower

the subjective component from actual knowledge to recklessness." *Id*. The court found that since *Brawner* was decided before *Trozzi*, *Brawner* controls. *Id.*

More recently, the Sixth Circuit found in *Mercer v. Athens Cnty.*, 72 F.4th 152 (6th Cir. 2023), that, after *Brawner*, to survive summary judgment on a deliberate indifference claim, a pretrial detainee must "'present evidence from which a reasonable jury could find (1) that [he or] she had an objectively serious medical need; and (2) that [the defendant's] action (or lack of action) was intentional (not accidental) and [the defendant] either (a) acted intentionally to ignore [the detainee's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [the detainee.]'" *Id.* at 161-62 (quoting *Brawner*, 14 F.4th at 597).

**B.**

Before applying these legal standards to the instant case, the Court must address the timing of Plaintiff's encounters with Defendants. There is no dispute that Plaintiff presented to the medical department on August 4, 2021, at 11:49 pm complaining of nausea, vomiting, diarrhea, and chills; that his blood pressure was taken and it read 82/50; and that he was sent back to his cell with a bottle of Gatorade, a wet cloth, and Pepto Bismol. Defendant Fentress charted, "Informed him to let deputy know if he started to feel worse and I would see him again." (DN 35, PageID. 220; DN 45, PageID.299). The parties likewise do not dispute that Plaintiff returned to the medical department the following morning, on August 5, 2021, at 6:02 am, complaining that he was continuing to vomit and have diarrhea, that his blood pressure was then at 80/50, and that he was sent back to his cell with Zofran, which is a medication to treat nausea and vomiting. *See* https://www.webmd.com/drugs/2/drug-30/zofran-oral/details (last visited November 1, 2023) (DN 35, PageID.222; DN 45, PageID.300).

11

The parties' versions of events diverge after this, however. Plaintiff and Defendants produce a progress note dated August 6, 2021, which states, "[L]ate entry for 8/5/21 approximately 0830; pt brought to medical while MD here to evaluate pt's c/o N/V/D. heart rate 111, b/p unable to obtain, pt diaphoretic, A&O x3 and reports he is having loose stools about every 30 minutes. MD advises pt be sent to ER which is done via cruiser." (DN 35, PageID.225, DN 45, PageID.301). The progress note suggests that, while it was created on August 6, 2021, it was a "late entry" and the medical encounter actually occurred on August 5, 2021, at 8:30 am. To that end, the medical records produced by both Plaintiff and Defendants include records from Owensboro Health Regional Hospital, which reflect that Plaintiff was admitted to the hospital on August 5, 2021, and discharged on August 9, 2021. (DN 35, PageID.226-27; DN 45, PageID.302-03). The hospital records produced by Plaintiff state the following:

> Result Date: 8/5/2021
> EXAM: US RENALS CLINICAL HISTORY: acute kidney injury and oliguria; aki COMPARISON: None. TECHNIQUE: Transabdominal grayscale and color Doppler evaluation of the kidneys and bladder. . . .
>
> Result Date: 8/5/2021
> PROCEDURE: XR CHEST 1 VIEW Clinical History: hypotension; pt states hypotension, diarrhea Indication; Same as above. Comparison: 9/20/2020. Technique: Single portable frontal projection of the chest was done. . . .

(DN 45. PageID.302-03).

However, Plaintiff asserts in the verified amended complaint that he was not sent to the hospital on August 5, 2021. He states, "Presented to medical dept at DCDC on 8/6/21 @1049 to see Dr. McCoy. . . . B.P. was too low to register on either [blood pressure machine or manual cuff]. Dr. McCoy ordered me rushed to the hospital via jail cruiser." (DN 14, PageID.102-03). Likewise, in his response signed under penalty of perjury to the motion for summary judgment, Plaintiff states, "On 8/6/21 I was wheeled via wheel chair to see Dr. Tamberly McCoy 48 hours after my

12

first medical visit. . . . Blood pressure was attempted but too low to be obtained. Finally, I was transported to the hospital." (DN 45, PageID.288).

In addition, in the copy of progress note referenced above dated 8/6/21 which Plaintiff attaches to his response (*Id.*, PageID.301) in which the medical provider stated, "late entry for 8/5/21 approximately 0830 . . .[,]" Plaintiff handwrites on the copy, "– Sent to Hospital on 8/7/21 not 8/5/21[;] – Saw Nurse Fentress on 8/5/21 and was given medical knockoff for 8/5/21[;] – Doctor not here until Thursday 8-7-21."

Thus, Plaintiff contends that he was sent to the hospital on either August 6 or August 7, 2021, but the progress note entered regarding Defendant McCoy's encounter with Plaintiff reflects that Plaintiff was sent to the hospital on August 5, 2021. Medical records from Owensboro Health Regional Hospital, produced by Plaintiff and Defendants, document that Plaintiff was admitted to the hospital on August 5, 2021, and had two exams performed, an exam of his kidneys and a chest x-ray, on August 5, 2021. Plaintiff offers no explanation how or why the hospital's records would have documented an erroneous date for his admission or the kidney and chest examinations. The Court additionally observes that Plaintiff states in his handwritten notes on the copy of the progress note referenced above that he was sent to the hospital on August 7, 2021, and that "Doctor not here until Thursday 8-7-21." However, the calendar from August 2021 shows that August 5, 2021, was actually a Thursday and August 7, 2021, was a Saturday. https://www.timeanddate.com/calendar/monthly.html?year=2021&month=8&country=1 (last visited November 1, 2023).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Davis v. Gallagher*, 951 F.3d 743, 745 (6th Cir. 2020) ("[W]here self-serving

13

testimony is blatantly and demonstrably false, it understandably may not create a genuine issue of material fact, thereby allowing a court to grant summary judgment."). Because Plaintiff's sworn statements that he was ordered by Defendant McCoy to be transported to the hospital on either August 6 or August 7, 2021, are blatantly contradicted by the records from Owensboro Health Regional Hospital, the Court finds that the record evidence shows that Plaintiff was transported to the hospital on August 5, 2021, and that Plaintiff has not presented a genuine issue of material fact with respect to this issue. *See Thomas v. Harwood*, 1:17-cv-288-FDW, 2019 U.S. Dist. LEXIS 96037, at *9-10 (W.D.N.C. June 7, 2019) (concluding no reasonable jury would accept allegations in a verified complaint that were contradicted by all other available evidence); *Moak v. Sacramento Cnty.*, No. 2:15-cv-0640 MCE KJN P, 2017 U.S. Dist. LEXIS 119054, at *38-39) (E.D. Cal. July 28, 2017) (finding no triable issue of material fact where jail's housing records contradicted statement in the plaintiff's verified complaint and the plaintiff "adduced no competent evidence" to the contrary in his unverified response to the motion for summary judgment).

## C.

In their motion, Defendants do not dispute that Plaintiff's alleged condition constituted an objectively serious medical need.

Turning to the modified second element of the Fourteenth Amendment standard adopted by the Sixth Circuit in *Brawner*, the subjective element "must be addressed for each [defendant] individually." *Burwell v. City of Lansing, Mich.*, 7 F. 4th 456, 466 (6th Cir. 2021). Thus, the Court must consider the individual defendants' conduct "'based on the information that was available to them at the time[,]'" and "'information available to one defendant may not be automatically imputed to the other[]'" defendants." *Id.* (quoting *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 443-447 (6th Cir. 2014)) *see also Helphenstine*, 60 F.4th at 312 ("[W]e review each

14

defendant's actions individually."). Ultimately, the evidence must demonstrate that the individual defendant was personally "aware of facts from which he or she could infer a substantial risk of serious harm." *Winkler*, 893 F.3d at 891. The evidence must also demonstrate that the individual defendant did, in fact, draw that inference and then consciously disregarded the risk of harm. *See, e.g.*, *North v. Cuyahoga Cnty.*, 754 F. App'x 380, 384 (6th Cir. 2018).

### *Defendant McCoy*

The record evidence shows that Plaintiff was seen by Defendant McCoy for the first time on August 5, 2021, at approximately 8:30 am. Defendant McCoy evaluated Plaintiff, including taking his heart rate and assessing that his blood pressure was unable to be obtained, and sent him to the emergency room via cruiser where he received emergent treatment. There is no evidence that Defendant McCoy had any awareness of Plaintiff's condition before she saw him on August 5, 2021.

Upon review, the Court finds that Defendant McCoy has met her burden to show that she did not act "intentionally to ignore [Plaintiff's] serious medical need, or (b) recklessly fail[] to act reasonably to mitigate the risk the serious medical need posed to [Plaintiff.]" *Brawner*, 14 F.4th at 597. She assessed Plaintiff's medical needs and took prompt action to send him to the emergency room. Plaintiff offers no admissible evidence to present a genuine issue of material fact showing that Defendant McCoy's actions meet the standard for deliberate indifference under *Brawner*. Accordingly, the Court finds that Defendant McCoy is entitled to summary judgment on this claim.

To the extent Plaintiff alleges a separate claim against Defendant McCoy based on his allegation in the amended complaint that the kidney specialist made two follow up appointments for him but that the appointments "were immediately canceled and deemed 'unnecessary' by Dr.

15

McCoy" (DN 14, PageID.103), Plaintiff provides no evidence to support his claim that the appointments were scheduled or that they were canceled by Defendant McCoy or the reason for canceling them. However, construing Plaintiff's allegations as true, the Court finds that Defendant McCoy's determination that Plaintiff did not need to see a specialist after receiving care in the hospital amounts to one doctor's difference of opinion with another's about the proper course of treatment, which may give rise to a negligence claim, but negligence is not sufficient to meet the modified standard under *Brawner*. *See Anderson v. Monroe Cnty. Corr. Facility*, 2023 U.S. Dist. LEXIS 97951, 2023 U.S. Dist. LEXIS 97951, at *6 (S.D. Ohio June 5, 2023) (medical provider's "failure to retain a specialist . . . fail[s] to state a deliberate indifference claim under the Fourteenth Amendment" because it indicates only negligence or medical malpractice which is insufficient under *Brawner*) (citing *Brawner*, 14 F.4th at 596); *see also Darby v. Greenman*, 14 F.4th 124, 129 (2d Cir. 2021) (holding, after the modification of the second prong of the Fourteenth Amendment's deliberate indifference standard in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), that "a difference of opinion about the proper course of treatment" does not demonstrate deliberate indifference). Therefore, the Court finds that Defendant McCoy has met her burden with regard to this claim and that Plaintiff has offered no admissible evidence to present a genuine issue of material fact. Defendant McCoy is, therefore, entitled to summary judgment on this claim, as well.

### *Defendant Fentress*

The record evidence shows that Plaintiff presented to the medical department on August 4, 2021, at 11:49 pm, complaining of nausea, vomiting, diarrhea, and chills. Defendant Fentress documented that he was pale, diaphoretic (or sweaty), and had a blood pressure of 82/50. Defendant Fentress gave Plaintiff a bottle of Gatorade, a cool wet cloth, and Pepto Bismol; advised

patient to sip on Gatorade and to move slowly when arising from bed; and informed him to let a deputy know if he started to feel worse and that she would see him again.

The evidence also shows that Plaintiff presented to the medical department again approximately six hours later on August 5, 2021, at 6:02 am. (*Id.*, PageID.219). Defendant Fentress charted that Plaintiff was brought to medical by a deputy; that he continued to vomit and have diarrhea and vomited the Pepto Bismol he had been given earlier. She also observed that he continued to be pale and sweaty and recorded his blood pressure as 80/50, and she gave him Gatorade and 4 mg of Zofran to treat his nausea.

Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). This is not a situation where Defendant Fentress failed to give Plaintiff medical treatment. She treated his complaints of nausea, vomiting, and diarrhea. Plaintiff's dispute is with the adequacy of the treatment. Defendant Fentress's actions may have amounted to medical negligence, but as stated above, medical negligence is not sufficient to state a violation of the Fourteenth Amendment under *Brawner*. *See, e.g.*, *Vontz v. Hotaling*, No. 2:19-cv-12735, 2023 U.S. Dist. LEXIS 62994, at *15 (E.D. Mich. Mar. 6, 2023) ("As to the second prong, it is important to note that *Brawner* did not change the principle that mere medical negligence, nor a disagreement between treater and patient as to the better course of treatment, does not equate to a constitutional violation[] under . . . the Fourteenth Amendment.") (citing *Brawner*, 14 F.4th at 596), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 62432 (E.D. Mich., Apr. 10, 2023).

The Court distinguishes this case from the Sixth Circuit's recent published decision in *Mercer v. Athens Cnty.*, where the court held that even though "we are generally 'reluctant to second guess the medical judgment of prison medical officials,' such officials 'may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment.'" 72 F.4th at 162 (quoting *Howell v. NaphCare, Inc.*, 67 F.4th 302, 313 (6th Cir. 2023)). In *Mercer*, the Sixth Circuit reversed the entry of summary judgment in favor of a medical provider defendant, Nurse Gray, where the nurse had evaluated a pretrial detainee who had suffered a reported stroke and sent her back to her cell without treatment and the detainee ultimately died. The court found as follows:

> Nurse Gray saw Ohlinger three times, all relatively close in time. And certainly after the second incident—when faced with additional reports that Ohlinger had suffered another seizure, had a headache, and had urinated on herself—Nurse Gray knew, or should have known, that Ohlinger had a serious medical condition requiring further medical attention, despite Officer Lowery's contention that an inmate urinating on herself was a common occurrence in the jail and not necessarily indicative of a medical emergency. Rather than seek additional medical assistance, Nurse Gray sent Ohlinger back to her cell after each of the first two incidents, where she remained until an inmate found her unresponsive in the third incident. Even though Nurse Gray provided some treatment to Ohlinger and we are generally "reluctant to second guess the medical judgment of prison medical officials," such officials "may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment." *Howell*, 67 F.4th at 313 (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 944 (6th Cir. 2010)).

*Id.*

Unlike the nurse in *Mercer*, who examined the plaintiff but provided her no treatment and sent her back to her cell, Defendant Fentress examined Plaintiff two times in a six-hour window and provided treatment to Plaintiff consistent with his complaints of nausea, vomiting, and diarrhea. Although she did not provide more aggressive treatment, Plaintiff was seen by Defendant McCoy within three hours of his second encounter with Defendant Fentress and sent to the emergency room. While Defendant Fentress may have been negligent in failing to provide more

aggressive treatment to Plaintiff, such negligence does not state a Fourteenth Amendment violation. "With the benefit of hindsight, it is easy to say that [the defendant] should have encouraged the jail to call for immediate medical assistance. But [the defendant] 'performed [her] duties. That [she] did not take the extra step of bringing the need for more aggressive intervention to [the jail], that failure at most . . . amounts only to negligence.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 614 (6th Cir. 2022) (citing *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 536 (6th Cir. 2012)); *see also Howell*, 67 F.4th at 313 (holding that the fact that "a medical professional misdiagnosed a patient does not rise to the level of deliberate indifference"); *Jones*, 625 F.3d at 944 (holding that a doctor who misdiagnosed an inmate's cancer as constipation was not deliberately indifferent in part because some of the inmate's symptoms were consistent with constipation).

Moreover, Plaintiff argues that Defendant Fentress violated a medical policy when she did not order that he be transported to the hospital after the first blood pressure reading. Construing this allegation as true, a failure of prison personnel to follow institutional procedures or policies may show negligence but does not give rise to a constitutional claim. *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (rejecting inmate's argument that prison failed to follow Michigan prison regulations in putting him in segregation).[4]

For these reasons, the Court finds that Defendant Fentress has met her burden to show that she did not intentionally ignore Plaintiff's medical condition or recklessly fail to act to mitigate his condition which would establish a violation of the Fourteenth Amendment under *Brawner*.

---

[4] With regard to Plaintiff's claims in his response that he was "blocked" from gathering evidence by Defendants or their attorney, Plaintiff filed a motion to compel the release of discovery materials (DN 33), and the Court denied the motion, gave instruction on the proper way to seek the production of documents, and directed Plaintiff to refer to the Court's *Pro Se* Prisoner Handbook which had been sent to him for further explanation of the discovery process. (DN 41). On the same date, the Court also granted Plaintiff's motion for extension of time to file a response to the motion for summary judgment. (DN 44).

Plaintiff has failed to provide admissible evidence to present a genuine issue of material fact on this claim. Accordingly, the Court finds that Defendant Fentress is entitled to summary judgment.

V.

For the reasons set forth above, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that the motion for summary judgment filed by Defendants McCoy and Fentress (DN 35) is **GRANTED**. The Court will enter a separate Judgment dismissing the action.

Date: November 17, 2023

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4415.010